UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(SAN JOSE DIVISION)

| | |
|---|---|
| VENUS MCINTOSH, AN INDIVIDUAL AND ERIC MCINTOSH, AN INDIVIDUAL PLAINTIFFS, <br><br> v. <br><br> SAMSUNG RESEARCH AMERICA, INC., SAMSUNG ELETRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD. SPRINT COMMUNICATIONS, INC., DOES 1-50 <br><br> DEFENDANTS | COMPLAINT AND JURY DEMAND <br><br> Civil Action No.: |

**ORIGINAL COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE RELIEF**

**AND DEMAND FOR JURY TRIAL**

Plaintiffs, VENUS MCINTOSH and ERIC MCINTOSH ("Plaintiffs") by and through their attorneys the Kelley Law Firm, P.C., hereby bring this Complaint for Damages, Restitution, Injunctive Relief and Demand for Jury Trial against Defendants SAMSUNG RESEARCH AMERICA, INC., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG ELECTRONICS CO., LTD., (collectively hereinafter, "SAMSUNG"), SPRINT COMMUNICATIONS, INC., and DOES 1-50, and show this Honorable Court as follows:

**I.**

**PARTIES, JURISDICTION, and VENUE**

1. Plaintiff, Venus McIntosh was sleeping when her Samsung Galaxy 6 smartphone combusted suddenly and without warning. She suffered severe third degree burns to her breast. The caused immense pain, required reconstructive surgery, and has resulted in permanent scarring and disfigurement.

2. Unfortunately, the physical and psychological pain she experienced was the result of decisions by Defendants. Defendants decided to increase sales by expanding battery capacity and reducing charging times. However, the increase in battery capacity came at the expense of

PLAINTIFFS' ORIGINAL COMPLAINT                                                              1

consumer safety. SAMSUNG knew of the risks involved, but continued in pursuit of economic gain.

3. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because Defendant, SAMSUNG RESEARCH AMERICA, INC. has its principal place of business in Mountain View, California.

4. This Court has personal jurisdiction over SAMSUNG ELECTRONICS AMERICA, INC., because it conducted and continues to conduct substantial business in California, and has sufficient minimum contacts with California, including the fact that Samsung Media Solutions Center America, a division of SAMSUNG ELECTRONICS AMERICA, INC., is based out of Mountain View, California; and SAMSUNG ELECTRONICS AMERICA, INC.'S printer product division is headquartered in Irvine, California.

5. This Court has personal jurisdiction over SAMSUNG ELECTRONICS CO., LTD because it conducted and continues to conduct substantial business in California, and has sufficient minimum contacts with California, including: Samsung Strategy and Innovation Center, a global organization within SAMSUNG'S Device Solutions division, is headquartered in Menlo Park, California; Samsung Information Systems America is headquartered in San Jose, California; Samsung Semiconductor, Inc. is headquartered in San Jose, California; and, Samsung Open Innovation Center is located in Palo Alto, California.

6. Venue is proper in this Court under 28 U.S.C. § 1391 because SAMSUNG innovates, researches, develops, improves, and markets a substantial number of phones in this District. A substantial part of the events and/or omissions alleged in this complaint, giving rise to PLAINTIFF claims, occurred in, emanated from and/or were directed from this District. Moreover, the majority of the product design decisions that would have occurred, occurred in California. The key depositions in the matter will take place in California and within the boundaries of this division.

7. This Court has personal jurisdiction over SPRINT COMMUNICATIONS, INC. (hereafter SPRINT). The name SPRINT is an acronym for "Southern Pacific Railroad Internal Network Telecommunications," demonstrating SPRINT's deeply rooted tradition of doing business in California. SPRINT's research and development headquarters is located in California. SPRINT's website recently featured a webpage headline "Welcome California Customers." SPRINT sells products at a number of retail locations throughout California.

8. PLAINTIFF VENUS MCINTOSH is a resident of Georgia. She purchased a Samsung Galaxy S6 from her local Sprint store and received service from Sprint.

9. PLAINTIFF ERIC MCINTOSH is a resident of Georgia. He asserts claims for loss of consortium.

## II.
## FACTS

10. On or about August 11, 2016, VENUS MCINTOSH was enjoying her afternoon nap when suddenly and without warning she was awakened by the burning sensation of her right breast and chest area. Mrs. McIntosh soon came to realize that her newly purchased Samsung Galaxy S6 cellular device had combusted and was still extremely hot to the touch. One witness stated that the burns to her right breast and chest area looked as though it had been "dowsed with lighter fluid and set on fire." She was taken to Piedmont Immediate Care where she was treated for third-degree burns. Mrs. McIntosh had no notice of the hazardous nature of the Samsung Galaxy S6 cellular device; nothing in the applicable warnings or displays advised her of the danger posed by the product. If anything, the potential for combustion was downplayed by Samsung and related entities. Not only is there an available action for products liability, both for design defects and for failure to warn, but also the dramatic misrepresentations in regard to this matter are tantamount to common law fraud and negligent misrepresentation.

11. Defendant concealed its knowledge of the defects in its products from PLAINTIFFS, and the public in general.

PLAINTIFFS' ORIGINAL COMPLAINT 3

12. Consequently, PLAINTIFFS seek compensatory and punitive damages, together with interests, costs of suit, attorney's fees, and all such other relief as the Court deems proper, as result of her use of the Samsung Galaxy S6, which has caused, may cause and/or will continue to cause Plaintiff to suffer and/or be at greatly increased risk of serious physical pain and mental anguish, including possible lifelong medical treatment, monitoring and/or medications, and fear of the usage of electronic products.

## SAMSUNG'S GALAXY S6

13. The SAMSUNG "Galaxy S" series has been marketed as a premium smartphone. The first generation "Galaxy S" phone hit the market in June 2010, and was followed in subsequent years by the SII, SIII, S4, S5, S6, and S7. In April of 2015, the S6 model used by VENUS MCINTOSH was released. **SAMSUNG** advertised the S6 as having "next level performance" and "next level charging," including built in wireless charging. The "Galaxy S" phones are powered by lithium ion batteries.

14. The batteries in SAMSUNG'S phones are measured in milli-ampere hours ("mAh"), which is a unit of electric charge that expresses the capacity of a battery – how much total energy a battery can discharge before needing to be recharged. A battery's discharge rate is the amount of current being drawn from the battery. The length of time a battery will run depends on both the battery's capacity and discharge rate. The Galaxy 6 battery capacity is measured at 2,550 mAh, making it substantially similar in battery capacity of the recalled Note7. Even after the Note7 was recalled, the Galaxy 6 remained on the market and in the hands of consumers.

15. At this level, there is a risk of overheating, fire and explosion as they were designed, engineered, developed, manufactured, produced and/or assembled in a substantially similar manner to the Note7.

16. The dangers posed by lithium ion batteries made headlines recently when numerous SAMSUNG Note7 devices exploded and burst into flames. This caused the Consumer Product Safety Commission ("CPSC") to order a formal recall of the Note7. The Note7 devices have also

been banned from all commercial air travel. SAMSUNG initially offered an exchange program for the Note7.

17. Lithium ion batteries are often used in consumer electronics. However, they present inherent risks which require software, hardware and design solutions and protections to operate safely. The electrolyte material in the batteries is highly volatile, flammable, and potentially explosive if it gets too hot. Dr. Donald Sadoway, a Materials Chemistry professor at MIT, described why lithium ion batteries explode in an interview with Time Magazine:

"If the temperature gets high enough . . . at some point, if you get up to about 400- 500 degrees Centigrade, the metal oxide in the negative electrode actually starts liberating oxygen. And that's really dangerous, because now, instead of having a fire . . . getting its oxygen from the air surrounding it, it's getting its oxygen from inside the battery itself. The term of art is, this has now become a bomb. You've got fuel and oxygen in the same place at the same time."

18. This is often referred to as a "thermal runaway" event, after which the battery will catch fire or explode. A thermal runaway event generates high temperatures exceeding 1100 degrees Fahrenheit. It can happen in a variety of circumstances, including when the battery is overcharged, when it is rapidly discharged, when there is a cell defect, when there is cell damage, and in heat.

19. Thermal runaway can also be the product of defective software design.

20. In cellular phones, both software and hardware regulate the temperature, charging and use of the battery. If the software protocols are programmed or set incorrectly a thermal runaway event can occur. A careless manufacturing process that leaves unwanted material in the battery can also lead to thermal runaway. A poorly manufactured separator that breaks can also lead to thermal runaway. As can a defective thermal spreader can lead to a thermal runaway.

21. Samsung has issued a root cause analysis of the Note7 thermal runaway events. Specifically, Samsung has admitted that there were multiple manufacturing defects in the batteries in relation to the Note7. It is likely these same issues existed with regard to the Galaxy 6.

**SAMSUNG WAS AND IS AWARE OF OVERHEATING PROBLEM WITH THE GALAXY 6 PHONES AND EARLIER MODELS AND FAILED TO FIX THE PROBLEM OR WARN ITS CUSTOMERS**

22. SAMSUNG made the choice to increase the power of the battery in the Subject Phones despite knowing that older models and generations with less powerful batteries were experiencing problems with overheating, catching fire, and even exploding. The problem dates back several years; and well before the release of the Galaxy 6. It is only with the Note7 that complaints of overheating, fire and explosion became so overwhelming that SAMSUNG could no longer ignore or mask the problem.

23. SAMSUNG had good reason to be concerned about overheating in its smartphones. The occurrence of similar incidents in other models of SAMSUNG phones and electronic devices has been reported through the media and consumer protection agencies for years. Despite knowledge and awareness, SAMSUNG failed to fix the root problem, notify or warn the public of the dangers its electronic devices presented, initiate a recall of all devices where overheating, explosion, and/or fire were foreseeable, or otherwise address the problem.

24. The CPSC has recorded numerous consumer incident reports of SAMSUNG phones and accessories overheating, catching fire, and even exploding. The reports relate to a variety of devices – including the Galaxy S2, Galaxy Tab 2, Galaxy Tab 3, Galaxy S3, Galaxy S4 Active, Galaxy S5, Galaxy S6, Galaxy S6 Edge, and Galaxy S6 Active. The consumer complaints of such problems date back to August 2011.

25. Consumer reports to CPSC regarding unsafe Samsung Galaxy S and Samsung Galaxy Note products include the following:

   a) On September 19, 2015, a consumer reported that the Samsung charging device for a Galaxy S6 was "overheating excessively under normal use." "The consumer further reported that the heating was "severe" enough to burn the consumer. CPSC Report No. 20150919-9088D- 2147428266.

PLAINTIFFS' ORIGINAL COMPLAINT                                                                                            6

b) On December 29, 2015, a consumer reported that a Samsung phone charger for a "Newer Samsung Galaxy" had "almost started on fire." The "phone was red hot," the tip of the charger was black, and the phone was "completely toast." The consumer further reported: "Totally unsafe! My house could have started on fire." CPSC Report No. 20151229-96F83-2147425364.

c) On January 23, 2016, a consumer reported that a Galaxy S6 began emitting a "strange smell," and that the Samsung charger was "warped, melted, and discolored." The consumer further reported that the phone was "extremely hot" to the point it would have "burned a small child." The incident occurred while the phone was charging. CPSC Report No. 20160123-F8845-2147424397.

d) On March 21, 2016, a consumer reported that a Samsung charging device for a Galaxy S6 "caught fire and melted." CPSC Report No. 20160321-83C90-2147420788.

e) On September 19, 2016, a consumer reported their five-month-old Galaxy S6 charger was overheating and had "melted plastic from the overheating of the charger." The consumer reported the "Heating is severe," and that the phone "gets very hot to the touch…enough to burn myself." The consumer also reported that the "chargers are original chargers, from the box…that came with the phone. On September 21, 2016, a consumer reported their Galaxy S6 "heats up to the point where it can't be used because it'll burn," and that Samsung had refused to address his serious concern about his own safety and risk of fire or explosion.

f) On January 23, 2017, a consumer reported that their S6 was overheating.

g) On September 23, 2017, a consumer reported using a Samsung Galaxy S6 "when it started reporting it no longer had service. It then got very hot near the power button. I burnt my finger trying to get it to turn off." The consumer explained that "Despite getting hot enough that I got a burn that blistered, the phone has never reported itself as being overheated."

26. SAMSUNG was advised of these reports and the hazards and has acknowledged the same by responding on the agency's website. On information and belief, was directly advised of the issues by consumers.

27. The Galaxy S6 is unsafe for its intended use by reason of defects in its design, engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot safely serve its purpose, but can instead expose the public and PLAINTIFFS to serious injury.

## FIRST CAUSE OF ACTION
### Products Liability Against Samsung, Sprint, and Does 1-50
### (O.C.G.A. §51-1-11)

1. PLAINTIFFS incorporate the preceding paragraphs as if fully set forth herein.

2. VENUS MCINTOSH purchased a new Galaxy 6 Smartphone for use on the SPRINT network.

3. SAMSUNG, SPRINT and DOES 1-50 were each responsible for placing the defective product into the stream of commerce.

4. The Galaxy 6 Smartphone was defective at the time it left the manufacturer, in that, *inter alia*, it was likely to overheat and possibly combust due to hardware and software defects.

5. VENUS MCINTOSH's injuries were proximately caused by the Galaxy 6 Smartphone.

6. ERIC MCINTOSH suffered a loss of consortium as the result of the injuries his wife sustained.

## SECOND CAUSE OF ACTION
### Negligence Against Samsung, and Does 1-25

7. PLAINTIFFS incorporate the preceding paragraphs as if fully set forth herein.

8. SAMSUNG designed and manufactured the Galaxy 6 that caused injuries to VENUS MCINTOSH. On information and belief, DOES 1-25, whose identities are not currently known or ascertainable to PLAINTIFFS, also participated in the design and manufacture of the Galaxy 6 purchased by VENUS MCINTOSH.

9. SAMSUNG and DOES 1-25 had a duty to design and manufacture products with ordinary care.

10. PLAINTIFFS allege the Galaxy 6 in question suffered from a design defect that rendered it unreasonably dangerous, and alleges additionally or in the alternative, it was defective due to a manufacturing defect, which rendered it unreasonably dangerous.

11. SAMSUNG and DOES 1-25 rejected safer alternative designs.

12. Due either to a design defect common to all products, or a manufacturing defect specific to the product in question, *inter alia*:

   a) featured a battery capacity that rendered the device susceptible to overheating;

   b) failed to incorporate adequate software protection to prevent overheating; was insufficiently insulated against overheating;

   c) featured a battery susceptible to puncture or damage;

In addition to the defects identified above, or in the alternative, Plaintiff alleges any other defect which may be proven at trial.

13. PLAINTIFFS' injuries were proximately caused by the defects identified herein.

14. PLAINTIFFS allege Defendants knew or should have known that the product left the manufacturer in a condition that rendered it dangerous beyond consumer expectation.

15. PLAINTIFFS' further allege warnings, if any, were entirely inadequate.

16. VENUS MCINTOSH's injuries were proximately caused by the Galaxy 6 Smartphone.

17. ERIC MCINTOSH suffered a loss of consortium as the result of the injuries his wife sustained.

### THIRD CAUSE OF ACTION
### Negligence Against Sprint and Does 1-25

18. PLAINTIFFS incorporate the preceding paragraphs as if fully set forth herein.

19. SPRINT and Does 1-25 had a duty not to place products that were not merchantable and not reasonably suited to be used as intended into the stream of commerce. SPRINT also exercised

substantial control over the content of warnings or instructions accompanying the product and had the opportunity to warn its customers.

20. SPRINT and DOES 1-25 failed to act reasonably diligently in response to reports of combustion by SAMSUNG users, or in the alternative, SPRINT had actual knowledge of the defect at the time it supplied the product and injury resulted from the defect. SPRINT could have utilized adequate warnings, but also failed to warn consumers.

21. PLAINTIFFS' injuries were proximately caused by the actions and omissions of SPRINT and DOES 1-25.

### FOURTH CAUSE OF ACTION
### Breach of Implied Warranties Against All Defendants

1. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

2. The warranty of merchantability is implied in every commercial transaction. The warranty of merchantability requires that products be of reasonable workmanlike quality and free from defects. Defendants, and each of them, warranted the Galaxy 6 Smartphone was of merchantable quality.

3. VENUS MCINTOSH relied on Defendants to design, manufacture, distribute and/or sell products of merchantable quality.

4. Defendants, and each of them, breached the implied warranty of merchantability for intended purpose and Defendants refuse to properly repair or replace these items.

5. As a proximate result of this conduct, VENUS MCINTOSH is entitled to recover for the breach of the implied warranty of merchantability.

### PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully pray for the following relief:

1. An order enjoining **SAMSUNG** from selling the Subject Phones;
2. An order enjoining **SPRINT** from selling the Subject Phones;
3. All economic and non-economic losses, to the full extent allowed be received;
4. For restitution in an amount according to proof at trial;

5. For punitive damages;

6. An award for **PLAINTIFFS** for the costs of suit and reasonable attorneys' fees as provided by law;

7. For interest upon any judgment entered as provided by law; and,

8. For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 11th day of August, 2018.

                KELLEY LAW FIRM, P.C.

                */s/ S. Tomiyo Stoner*
                _____
                S. Tomiyo Stoner
                California Bar No. 289246
                stoner@kelleyfirm.com
                2614 Main Street
                Dallas, Texas 75226
                Phone: (972) 850-0500
                Fax: (972) 850-0400

                ATTORNEY FOR PLAINTIFFS